# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

LIFENET HEALTH,
    a Virginia Corporation,

        Plaintiff,

        -v.-

RTI SURGICAL, INC.,
    a Delaware Corporation,

        Defendant.

Case No.  1:18-cv-00146-MW-GRJ

## JOINT RULE 26(F) REPORT AND DISCOVERY PLAN

Under the Court's Initial Scheduling Order issued August 2, 2018, Dkt. 17, and Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiff LifeNet Health ("LifeNet" or "Plaintiff") and Defendant RTI Surgical, Inc. ("RTI" or "Defendant") jointly submit this report.  The parties could not agree on a schedule and certain other matters.  Their respective positions in those areas are set out in this report, and the parties jointly request a Rule 16 conference to resolve them.  In light of the current schedule set by the Court, the parties request a Rule 16 conference at the earliest convenience of the Court.

## I.    Rule 26(f) Conference

These persons participated in the Rule 26(f) conference held by telephone on September 4, 2018: Michael H. Jacobs, William Jackson Matney, Jr., and Pilar R.

Stillwater, representing Plaintiff LifeNet; and David Headrick, Greg Schodde, and Stephanie Marchman, representing Defendant RTI.   As part of the Rule 26(f) conference, the parties met and conferred regarding:

- Each party's willingness to consent to magistrate judge jurisdiction under Section 2(a)(i) of the Court's Initial Scheduling Order;

- The terms of a stipulated protective order governing the production of documents in this matter; the parties are still conferring on an agreed order and will submit it promptly upon agreement;

- The matters identified in Federal Rule of Civil Procedure 26(f);

- The matters identified in the Court's Initial Scheduling Order, Dkt. 17, at Section (2)(a); and

- The additional matters set out below.

## II.    Initial Disclosures

The parties will serve on one another their Rule 26(a)(1) disclosures no later than September 18, 2018, and file their Rule 26(a)(1) disclosures no later than September 25, 2018, under Sections 2(b) and (11) of the Court's Initial Scheduling Order.

## III. Nature and Basis of All Claims and Defenses

### A. Plaintiff's Statement

This is an action for patent infringement arising under the Patent Laws of the Unites States, 35 U.S.C. § 271, *et seq*. In this patent-infringement case, LifeNet has asserted five U.S. Patents, Nos. 6,569,200 (the "'200 patent"); 9,579,420 (the "'420 patent"); 9,585,986(the "'986 patent"); 6,458,158(the "'158 patent"); and 8,182,532 (the "'532 patent") (collectively the "Asserted Patents"), against RTI in the field of tissue and bio-implant technology, as detailed below.

LifeNet filed the Complaint in this matter on June 27, 2018 in the U.S. District Court for the Middle District of Florida and the Case was subsequently transferred to this Court. On August 24, 2018, RTI filed a Motion to Dismiss Counts I-III of the Complaint, which assert infringement of the '200, '420, and '986 or "Asserted Soft Tissue Patents." Dkt. No. 37. LifeNet filed its Opposition on September 7, 2018. Dkt. No. 41. RTI has not otherwise responded to or answered the Complaint.

### 1. LifeNet Health

LifeNet Health is a nonprofit corporation organized under 26 U.S.C. § 501(c)(3) and existing under the laws of the Commonwealth of Virginia and having a principal place of business in Virginia Beach, Virginia. LifeNet Health's mission statement is "Saving Lives, Restoring Health and Giving Hope." Founded in 1982 as the Eastern Virginia Tissue Bank, LifeNet Health is one of the world's

most trusted providers of transplant solutions, from organ and tissue procurement to innovative bio-implant technologies and cellular therapies.  Each year, LifeNet Health facilitates the transplantation of over 400 organs in the United States and distributes over 500,000 bio-implants of human donor tissue to meet the needs of hospitals and patients in the United States and internationally.  LifeNet Health is also extensively involved in promoting and facilitating tissue donation and bio-implant tissues.  In addition, LifeNet Health's Bio-Implants Division has pioneered technologies related to all aspects of the allograft (human) bio-implant production process, including disinfection, decellularization (the removal of cellular elements from an allograft bio-implant), fabrication, preservation, and sterilization.  The patents asserted by LifeNet are a result of LifeNet Health's extensive research and development in the field of tissue and bio-implant technology.

### 2.    LifeNet's Soft Tissue Patents and Products

LifeNet's U.S. Patent Nos. 6,569,200 ("the '200 patent"); 9,579,420 ("the '420 patent"); the "Asserted Soft Tissue Patents," are generally directed to, *inter alia*, "plasticized dehydrated or freeze-dried bone and/or soft tissue product[s] that do[] not require special conditions of storage," and methods for producing the same.  In 2010, with the launch of its Oracell® dermal implant, LifeNet introduced Preservon® grafts, processed using its proprietary bio-implant tissue-preservation technology based on the '200 patent family.  This technology is an ambient

4

temperature (room temperature) preservation method that simplifies the tissue-preparation and product-distribution processes and storage, saves valuable time in the operating room, and allows allograft tissue to retain its physical and biomechanical properties.

### 3.     LifeNet's Composite Bone Graft Patents

LifeNet's U.S. Patent Nos. 6,458,158 ("the '158 patent") and U.S. Patent No. 8,182,532 ("the '532 patent), are generally directed to, *inter alia*, "a composite bone graft for implantation in a patient."  LifeNet's VG2® Cervical, VG2® TLIF, VG2® PLIF, and VG2® RAMP products use technology based on the '158 and '532 patents.

### 4.     RTI's Infringing Soft Tissue Product

As also discussed in LifeNet's Opposition to RTI's Motion to Dismiss, Dkt. No. 41, RTI makes and sells various medical products including skin/dermal products under the brand name Fortiva.  RTI filed papers at the U.S. Food and Drug Administration ("FDA") and represented to the FDA that Fortiva "is substantially equivalent to the predicate device Strattice® (K070560) in intended use, material, design, and function."  RTI March 5, 2013 510(k) Summary ("RTI 510(k)") (attached as Complaint Exhibit F) at 1.  RTI makes a number of other claims about Fortiva in its FDA filings and in the Instructions for Use ("IFU") for Fortiva including that "[T]he device is ready for immediate use without extra

5

preparation (i.e., no rinsing, no soaking, etc.)," as is the earlier-litigated Strattice®

product.  *See* Fortiva IFU (attached as Exhibit G to the Complaint) at 2.  In prior

litigation involving the '200 patent, the Strattice product was found to infringe

claims 1-4, 7, 8, and 10 of the '200 patent.  *See* Civil Action No. 2:13-cv-00486,

September 6, 2013 (E.D. Va.), D.I. 369, 395.  The U.S. Court of Appeals for the

Federal Circuit upheld the verdict in LifeNet Health's favor on appeal in a

unanimous panel decision.  *See LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316

(Fed. Cir. 2016).

Based on the above and the additional reasons set out in more detail in

LifeNet's Complaint, and in LifeNet's Opposition to RTI's Motion to Dismiss,

Dkt. No. 41, LifeNet asserts that Fortiva infringes at least claims 7 and 8 of the

'200 patent; claims 1-4, 8, 9, 11, 13, and 14 of the '420 patent; and claim 11 of the

'986 patent.  Additionally, LifeNet asserts that RTI has been manufacturing, or

causing to be manufactured, Fortiva, according to the method of claims 16-18, 28,

29, 34, and 35 of the '420 patent, and RTI also infringes those claims.

## 5.    RTI's Infringing Bone Products

RTI is also in the business of manufacturing, selling, and/or offering for sale

various bone products including Capistrano Cervical Allograft Spacer System

("Capistrano"), Puros-S2 cervical ("Puros-S2"), AlloQuent-S ("AlloQuent"),

CeSpace Cortical Cancellous Bone ("CeSpace"), Cornerstone ASR-Cortical

Cancellous Block ("Cornerstone ASR"), and Elemax Cortical Cancellous Spacer ("Elemax"). These products are composite bone graft products, as described in detail in LifeNet's Complaint.

Based on the above and the additional information set out in detail in LifeNet's Complaint, LifeNet asserts that RTI's Capistrano, Puros-S2, AlloQuent, CeSpace, Cornerstone ASR, and Elemax (the "Infringing Bone Products") are allograft spine products that infringe at least claims 1 and 2 of the '158 patent and claim 12 of the '532 patent.

### 6. Additional Anticipated Issues

LifeNet anticipates that in addition to whether RTI's products and methods infringe the Asserted Patents, the following issues will likely arise during the course of this litigation:

- Contested issues of claim construction regarding certain terms of the asserted claims of the Asserted Patents;

- Validity and enforceability of four of the five Asserted Patents, the validity of the '200 patent having been affirmed by the Federal Circuit in *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316 (Fed. Cir. 2016);

- Whether the District Court litigation should be stayed pending any *inter partes* review that may be brought by RTI at the U.S. Patent Trial and Appeal Board under 35 U.S.C. § 311; and

- The appropriate measure and amount of damages and pre-judgment interest, assuming liability is proven.

## B.   Defendant's Statement

### 1.   About Defendant RTI Surgical

Defendant RTI Surgical was formed out of the University of Florida Tissue Bank in February of 1998 and is the second most successful corporate spin off in the history of the University.[1]   Initially known as "Regeneration Technologies, Inc.," RTI was listed on the NASDAQ in 2000 and merged with a German Company, Tutogen, in February of 2008 to form RTI Biologics.  In July of 2013, RTI Biologics acquired Pioneer Surgical to form RTI Surgical.  Headquartered in Alachua, Florida, RTI is responsible for over 5 million successful biologic implants and today employs over 1,000 people worldwide who innovate, make, and sell a wide range of life saving and life changing implants and surgical tools that benefit over 500,000 patients a year.

### 2.   LifeNet's Patents

LifeNet asserts five patents in this case that can be divided into two families. The first family (what LifeNet calls the "Asserted Soft Tissue Patents") are comprised of three patents.  They originate from a single application filed on June 30, 1998.  By statute, these patents expired on June 30, 2018, three days after this

---

[1] The most successful UF spinoff was Gatorade®.

8

case was filed.  These patents are the subject of RTI's pending Motion to Dismiss. (Dkt. 37.)

The second family of patents (what LifeNet calls the "Composite Bone Graft Patents") are comprised of two patents.  They originate from a single application filed on January 5, 1999.  By statute, these patents will expire on January 5, 2019.

There is no possibility of an injunction in this case.  The Asserted Soft Tissue Patents have expired and LifeNet has not sought and nor could it credibly seek a preliminary injunction on its Composite Bone Graft Patents that expire in less than 16 weeks.

### 3.    RTI's Products

The accused RTI products fall into two groups—the "soft tissue products" (against which LifeNet asserts its three Asserted Soft Tissue Patents) and the "assembled allograft products" (against which LifeNet asserts its two Composite Bone Graft Patents).

The accused soft tissue product is "Fortiva."  LifeNet's Asserted Soft Tissue Patents are subject to RTI's pending Motion to Dismiss based on LifeNet's failure to plausibly identify a compound in "Fortiva" that corresponds to the "plasticizer" required by every asserted claim in this patent family. The Fortiva product is processed using the Tutoplast process, which was originally developed by Tutogen and acquired by RTI in 2008.  Tutogen's origins go back to 1969 and Tutogen also

has a history of innovation in the soft tissue processing area, and has been awarded multiple patents on the Tutoplast process, one of which dates to 1981.  (See, *e.g.*, U.S. Patent Nos. 4,300,243, 6,942,961, and 9,814,745.)

RTI's accused assembled allograft products are combinations of soft and hard bone cut and assembled into a shape useful for use in a certain spinal surgeries.  RTI has been making and selling at least one of the accused products since at least 2004 and possibly earlier.   RTI has been awarded patents on assembled allograft technology, including U.S. Patent No. 8,291,572, with a priority date that is prior to the earliest priority date claimed by LifeNet's Composite Bone Graft Patents.

### 4.    Issues to be Decided

RTI anticipates that at least these issues are likely to arise in this case:

- If LifeNet's claims based on its Asserted Soft Tissue Patents are allowed to move forward, what in Fortiva corresponds to a plasticizer and whether the product is "plasticized" with a "plasticizer" as a matter of claim interpretation and application of the properly construed claims to Fortiva.  Also, the validity of all three of these patents given (1) the long history of the Tutoplast process prior to the critical date and (2) other prior art using various compounds to clean tissue prior to the critical date.  RTI disagrees with LifeNet's

suggestion in this report that the decision of the Federal Circuit on LifeNet's '200 patent has or could have any preclusive effect on RTI, given that RTI was not a party to that case and had no opportunity to litigate any issue regarding the '200 patent in that case.

- The validity of LifeNet's Composite Bone Graft Patents given (1) RTI's prior work and patents on multi-component allografts, and (2) other prior art showing combinations of hard and soft bone in graft implants.

- Because RTI anticipates filing *inter partes review* ("IPR") petitions with the U.S. Patent Office ("PTO") asking the office to examine the validity of LifeNet's patents, whether this case should be stayed pending the resolution of those petitions by the PTO.

- Whether LifeNet's lengthy delay in suing estops LifeNet from asserting one or more of the asserted patents based on the prejudice to RTI in lost evidence, witnesses, and lost opportunities to implement alternative designs.

- Whether the accused products infringe any valid, asserted claim.

- If liability is found for a particular accused product and claim, what is the appropriate measure of damages and what is the damages period.

11

## IV.    Proposed Scheduling Order

Defendant RTI moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) on August 24, 2018 seeking to dismiss Counts I-III of LifeNet's Complaint. (Dkt. No. 37.)   RTI has not otherwise answered the Complaint. LifeNet filed its opposition on September 7, 2018.  (Dkt. No. 41.)  RTI requested oral argument.  Pending the Court's resolution, and RTI's filing of its answer to the Complaint, the full extent of the parties' claims and defenses remain uncertain. The parties have been unable to agree on a proposed schedule, and set forth their respective positions here.

As set out in the parties' Joint Discovery Report, Dkt. No. 40, filed on September 4, 2018, the parties have begun the discovery process. The parties will continue to meaningfully engage in the discovery process pending resolution of RTI's motion to dismiss and the resolution of the scheduling dispute.

### A.    Plaintiff's Scheduling Position

The Court's Initial Scheduling Order requested the parties provide explanation for any trial date in excess of eight months after filing of the Complaint, and made no mention of the Patent Local Rules ("PLR").  *See Generally* Dkt. No. 17.  Specifically, LifeNet understands the Court's Initial Scheduling Order—specifically, in light of the time to trial and the fact that initial expert reports are due on October 1—as explicitly indicating that the PLR do not

apply. *See* N.D. Fla. Loc. R. 88.3. Plaintiff therefore proposes a case schedule that attempts to efficiently complete discovery and reach a trial date as soon as possible, consistent with the sequence of events set forth in the Scheduling Order. At the same time, Plaintiff's schedule acknowledges that Plaintiff has an advantage in that it is familiar with its own patents and the subject matter of the lawsuit and so attempts to accommodate a longer period of time for Defendants to provide expert reports and complete their document and other discovery.

Plaintiff believes that a trial date within 13 months of the filing of the complaint is possible, and that this case is suitable for disposition without incorporation of the PLR, which will provide for a streamlined and efficient approach to discovery and motions practice. Plaintiff's first proposed schedule below therefore incorporates this approach. This schedule contemplates claim construction briefing taking place simultaneously with summary judgment or dispositive motions. The additional five months to trial are included to allow the pleadings to stabilize, allow Defendants to answer, and provide Defendants additional time to prepare their document production and expert reports, which they have indicated will not be complete by the current Rebuttal Expert Report date of October 31, 2018. In the event that the Court disagrees that this case is suitable for disposition without incorporation of the PLR, Plaintiff's second revised schedule below incorporates the PLR, while still reaching trial in July 2019, which

Plaintiff believes is more than fair in light of the fact that the Complaint was filed nearly three months ago.

| LifeNet's Proposed Case Schedule | | | |
|---|---|---|---|
| Event: | Dates Consistent With Court's Initial Scheduling Order: | LifeNet's Preferred Proposed Dates | LifeNet's Proposed Dates (Incorporating PLR): |
| Joint Rule 26(f) report | 9/18/2018 | 9/18/2018 | 9/18/2018 |
| Service of Rule 26(a)(1) initial disclosures | 9/18/2018 | 9/18/2018 | 9/18/2018 |
| Last day to request change to pretrial schedule | 9/17/2018 | 9/17/2018 | 9/17/2018 |
| Recommended last day to serve discovery requests | 9/17/2018 | 2/1/2019 | 2/1/2019 |
| Filing of Rule 26(a)(1) initial disclosures | 9/25/2018 | 9/25/2018 | 9/25/2018 |
| Infringement Contentions | N/A | N/A | 10/12/2018 (PLR 4.4(a)) |
| Advice of Counsel Disclosure & Production | N/A | N/A | 11/1/2018 (PLR 5.2) |
| Invalidity Contentions & Response to Infringement Contentions | N/A | N/A | 11/9/2018 (PLR 4.4(b)) |

14

| LifeNet's Proposed Case Schedule | | | |
|---|---|---|---|
| Event: | Dates Consistent With Court's Initial Scheduling Order: | LifeNet's Preferred Proposed Dates | LifeNet's Proposed Dates (Incorporating PLR): |
| Exchange of Proposed Claim Terms | N/A | N/A | 12/13/2018 (PLR 6.1) |
| Exchange of Preliminary Constructions & preliminary identification of extrinsic evidence & witnesses | N/A | N/A | 1/2/2019 (PLR 6.2) |
| Joint Claim Construction Statement | N/A | N/A | 1/22/2019 (PLR 6.3) |
| Last day for motions to compel | 11/1/2018 | 2/1/2019 | 2/1/2019 |
| Last day for joinder of parties and motions to amend pleadings | 11/1/2018 | 2/1/2019 | 2/1/2019 |
| Close of Claim Construction Discovery | 12/1/2018 | 12/1/2018 | 2/6/2019 (PLR 6.4) |
| Proposed Mediation Deadline | N/A | 1/15/2018 | 1/15/2018 |
| Opening Claim Construction Briefs | 12/21/2018 | 12/21/2018 | 2/21/2019 (PLR 6.5) |

| LifeNet's Proposed Case Schedule | | | |
|---|---|---|---|
| Event: | Dates Consistent With Court's Initial Scheduling Order: | LifeNet's Preferred Proposed Dates | LifeNet's Proposed Dates (Incorporating PLR): |
| Close of Fact Discovery | 12/1/2018 | 3/1/2018 | 3/1/2019 (PLR 6.7) |
| Initial Expert Witness Disclosure (on the issues on which each party bears the burden of proof) | 10/1/2018 | 12/3/2018 | 3/15/2019 (PLR 7.1) |
| Reply Claim Construction Briefs | N/A | 1/4/2019 | 3/13/2019 |
| Rebuttal Expert Reports | 10/31/2018 | 12/31/2018 | 4/12/2019 (PLR 7.1) |
| Claim Construction Hearing | N/A | Convenience of the Court (Same time as dispositive motions hearing) | Convenience of the Court (PLR 6.6) |
| Reply Expert Reports | N/A | N/A | 4/22/2017 (PLR 7.1) |
| Dispositive Motions | 12/21/2018 | 4/10/2019 | 5/10/2019 |
| Close of Expert Discovery | 12/1/2018 | 3/1/2019 | 5/17/2019 (PLR 6.7, 7.2) |
| Trial | 3/15/2019 | 7/15/2019 | 7/15/2019 |

### B.      Defendant's Scheduling Position

Because this is a patent infringement case and because the Court's initial scheduling order did not exempt this case from their application, the Court's Patent Local Rules apply.  (*See* Local Rule 88.3.)  RTI's proposed schedule applies the Patent Local Rules, with a short extension at the front end to allow the pleadings to stabilize and a modest extension of time between key milestones given the case's complexity and the fact that RTI will request PTO review of LifeNet's patents.

LifeNet's fast track proposal is not surprising from LifeNet's perspective given that LifeNet has litigated the '200 patent before and has had nearly 20 years to prepare this case. LifeNet provided no advance notice to RTI it considered RTI to be an infringer of these patents. RTI's first notice of LifeNet's claim was when LifeNet served the Complaint and LifeNet has failed to explain its egregious delay in filing suit.  (*See, e.g.*, Ex. 1, LifeNet's Response to RTI's Interrogatory Nos. 10 and 11.)  LifeNet's patents have expired or will expire in January. RTI's products have been on the market for years. There is no need for a rush to judgment in a five patent, seven accused product case with technical subject matter where the facts relevant to the prior art (and, in some cases, RTI's product development) are up to 20 or more years old.

### 1.    RTI's Requested Schedule Conforms to the Patent Local Rules, This Court's Practice, and the Facts of this Case

RTI respectfully requests the Court enter a case schedule that incorporates this Court's patent local rules and extends that schedule slightly (by four months) to account for case complexity, the status of the pleadings, and that RTI will be petitioning the PTO to review the validity of all five asserted patents and moving to stay this case pending the outcome of that review.   A table comparing RTI's schedule against the schedule that results by literally applying this Court's Patent Local Rules is set forth below.

**RTI'S REQUESTED SCHEDULE**

| Event | Schedule (Literally Applying Patent Local Rules) | RTI's Requested Schedule (Modifying Patent Local Rules Given Number of Patents/Products, Status of Pleadings, and IPR Filings) |
|---|---|---|
| Rule 26(a)(1) initial disclosures | September 18, 2018 (Tuesday) | September 18, 2018 (Tuesday) |
| Disclosure of Infringement Contentions (LPR 4.1) | October 18, 2018 (Thursday) | October 26, 2018 (Friday) |
| Disclosure of Invalidity Contentions and Response to Infringement Contentions (LPR 4.2 and 4.3) | November 19, 2018 (Monday) | December 21, 2018 (Friday) |
| Early Mediation | First two weeks of December, 2018 | First two weeks of January, 2019 |

| Event | Schedule (Literally Applying Patent Local Rules) | RTI's Requested Schedule (Modifying Patent Local Rules Given Number of Patents/Products, Status of Pleadings, and IPR Filings) |
|---|---|---|
| Exchange of proposed terms for construction (LPR 6.1) | December 17, 2018 (Monday) | February 8, 2019 (Friday) |
| Exchange preliminary constructions along with preliminary identification of extrinsic evidence (LPR 6.2(a)-(b)) | January 7, 2019 (Monday) | March 8, 2019 (Friday) |
| Joint Claim Construction Statement (LPR 6.3) | January 28, 2019 (Monday) | April 5, 2019 (Friday) |
| Completion of Claim Construction Discovery (LPR 6.4) | February 12, 2019 (Tuesday) | May 10, 2019 (Friday) |
| Serve and file opening Claim Construction Briefs (LPR 6.5(a)) | February 27, 2019 (Wednesday) | June 14, 2019 (Friday) |
| Serve and file responsive Claim Construction Briefs (LPR 6.5(b)) | March 19, 2019 (Tuesday) | July 12, 2019 (Friday) |
| Claim Construction Hearing (LPR 6.6) | Set by Court (mid-April 2019) | Set by Court (mid-August 2019) |
| Close of Fact Discovery | July 19, 2019 (Friday) | November 15, 2019 (Friday) |
| Initial Expert Witness Disclosure (on the issues on which each party bears the burden of proof) (LPR 7.1(b)) | August 19, 2019 (Monday) | December 13, 2019 (Friday) |

| Event | Schedule (Literally Applying Patent Local Rules) | RTI's Requested Schedule (Modifying Patent Local Rules Given Number of Patents/Products, Status of Pleadings, and IPR Filings) |
|---|---|---|
| Initial Expert Witness Disclosures (on the issues on which the opposing party bears the burden of proof) (LPR 7.1(c)) | September 18, 2019 (Wednesday) | January 17, 2020 (Friday) |
| Rebuttal Expert Witness Disclosures (as permitted by Rule 26) (LPR 7.1(d)) | September 30, 2019 (Monday) | January 27, 2020 (Monday) |
| Close of Expert Discovery (LPR 7.2) | November 6, 2019 (Wednesday) | March 4, 2020 (Wednesday) |
| Last day to file Motions for Summary Judgment or other dispositive motions | December 4, 2019 (Wednesday) | April 3, 2020 (Friday) |
| Response Summary Judgment Briefs | January 3, 2020 (Friday) | April 24, 2020 (Friday) |
| Reply Summary Judgement Briefs | January 10, 2020 (Friday) | May 1, 2020 (Friday) |
| Pre-trial Disclosures | January 31, 2020 (Friday) | May 29, 2020 (Friday) |
| Pre-trial Conference | February 14, 2020 (Friday) | June 17, 2020 (Wednesday) |
| Trial | March 16, 2020 (Monday) (or anytime thereafter based on Court's schedule) | July 13, 2020 (Monday) (or anytime thereafter based on Court's schedule) |

RTI's schedule is appropriate for at least these reasons:

**RTI's schedule applies this Court's Patent Local Rules, which this district has adopted for the fair and orderly resolution of patent cases.**  Local Rule 88.3 provides that the Patent Local Rules are the default for scheduling patent cases.  (See L.R. 88.3 ("the Northern District of Georgia's Local Patent Rules … apply in a patent case unless the Court orders otherwise").)  This practice has been in effect since at least November 24, 2015, the last time this Court's Local Rules were amended.  The Patent Local Rules, like those in other jurisdictions, recognize that patent cases are unique.  The rules implement a process that (1) identifies the asserted claims and infringement contentions, (2) identifies the prior art, (3) has the Court construe the claims, and (4) provides for discovery, expert analysis, and potentially dispositive motions after the Court has construed the claims.  (See Patent Local Rule 4.1 (infringement contentions), 4.3 (invalidity contentions), 6 (claim construction proceedings), 6.7 (discovery after claim construction), 7.1 (deferral of expert discovery on issues "other than claim construction" until after claim construction or close of discovery).)  LifeNet cites no authority on why the Court should decline to follow Local Rule 88.3 and this Court's Patent Local Rules.

**RTI's schedule follows what this Court has ordered in patent cases.**  This Court has ordered that the Patent Local rules apply in other patent cases.  *See, e.g., UPF Innovations, LLC v. The Athena Group, Inc.*, No. 1:18-cv-00037-MW-

GRJ at Dkt. 14 (joint report), Dkt. 16 (scheduling order adopting rules); *Digital Media Tech., Inc. v. Netflix, Inc.*, No. 4:16-cv-00243-MW-CAS at Dkt. 35 (joint report), Dkt. 36 (scheduling order adopting rules).  Consistent with these orders (and the rules themselves), RTI's schedule closes fact discovery a period of time after the Court's claim construction hearing and then proceeds to expert discovery, summary judgment, and trial.

**RTI's schedule accounts for the complexity of this case and the status of the pleadings.**  This case differs from some of this Court's prior patent cases in ways that warrant a modest extension of the Patent Local Rules deadlines. Discovery is likely to be extensive because this case is between competitors (i.e., this is not a non-practicing entity case) and the relevant time spans two decades. The parties' initial round of discovery comprised 262 requests for production and 29 interrogatories.  All five of LifeNet's patents originate from applications filed in the late 1990's (which is why they have expired or are about to expire).  Some of the accused RTI products have been on the market for nearly fifteen years. RTI has not yet filed an Answer because it has moved to dismiss three of LifeNet's five patent infringement counts.  (Dkt. 37.)  The pleadings are therefore in flux.  RTI's schedule allows them to stabilize before the parties start the patent disclosure process contemplated by the Patent Local Rules.

**RTI's schedule will afford at least two periods where the Court can consider whether to stay this case pending the PTO's review of LifeNet's patents.** RTI plans to petition the PTO for *inter partes review* ("IPR") of the validity of LifeNet's five expired (or soon to expire) patents. RTI plans to file its petitions no later than mid-January of 2019—a full five months before the one-year deadline for seeking IPR of LifeNet's patents. The PTO Patent Trial and Appeal Board ("PTAB") decides IPR's, and its judges are technically trained and highly experienced with patent invalidity issues. *See DSS Tech. Mgmt., Inc. v. Apple, Inc.*, No. 14-cv-05330-HSG WL 1967878, at *1 (N.D. Cal. May 1, 2015). The PTAB must resolve IPR's expeditiously. After a petition is on file, a patent owner has three months to respond. The PTAB must decide whether to institute review within three months of the response. 35 U.S.C. § 314(b). A final determination of the validity of a challenged patent will issue within twelve months of institution. 35 U.S.C. § 316(a)(11). With RTI's petitions on file by mid-January, the parties' should hear from the PTAB on its institution decision by July of 2019. The Court will have two opportunities to consider staying this case (once in January, before the parties start claim construction work, and once in July, before the Court conducts a claim construction hearing). IPR's are an efficient and effective way to address the validity (and construction) of LifeNet's patents, especially given that they all have expired or will shortly expire.

23

**RTI's schedule results in a time to trial that is below the national average for patent cases.** RTI's requested schedule results in a time from filing of LifeNet's Complaint to trial of 25 months, only four months longer than literally applying the Patent Local Rules. (*Compare* middle column *with* right-hand column in table above). This still is *less than* the median time to trial for all patent case nationwide resolved within the ten years spanning 2008-17. (*See* Ex. 2, (excerpt from publicly available PWC 2018 Patent Litigation Study: for 2008-17, median time to trial just under 30 months nationwide).)

### 2. None of LifeNet's Proposed Schedules Comply With The Court's Patent Local Rules Nor Are They Fair

LifeNet's three proposed case schedules should be rejected. LifeNet is well aware that the Patent Local Rules apply to patent cases in this district, and LifeNet's initial, pre-conference draft report admitted as much and in fact sought to *defer all case scheduling until RTI filed its Answer.* (*See* Ex. 3, LifeNet's 8/30/18 email and attached draft report (highlighted sections IV, VI.B, VI.C, and IX) (other e-mail attachments omitted)). This patent case is between competitors, involving five patents and seven products where the plaintiff has delayed years in filing suit and only now has filed suit on expired or expiring patents. The parties' initial round of discovery comprised 262 requests for production and 29 interrogatories. Under these circumstances, a fast track schedule with a trial setting on March 15, 2019, is not justified. LifeNet implicitly acknowledges this by offering two

alternate schedules with trial in July of 2019.  But neither of these comply with the rules or are appropriate.

LifeNet's "preferred" schedule fails to implement any of the Patent Local Rules.  Contrary to those rules, the schedule, among other things, fails to require LifeNet to (1) *commit* to identifying the patent claims it asserts against RTI, (2) *commit* to identifying the exact products accused of infringement, and (3) *commit* to explaining, via claim charts, how those products infringe.[2]  Instead, it provides that the parties and Court undertake claim construction without even knowing what claims are asserted.  It has experts on all topics (e.g., invalidity) opining *during the claim construction process without the benefit of the Court's claim construction ruling*.  Claim construction is a matter of law for the Court.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 384 (1996).  But LifeNet's chaotic schedule would have the experts offering opinions on topics that depend on the Court's claim construction (e.g., invalidity, acceptable non-infringing alternatives, etc.) *before* knowing how the Court has construed the claims.  This schedule is inefficient, unworkable, and unfair.  It should be rejected.

LifeNet's third proposed schedule, which purports to "incorporate" the Patent Local Rules, is no better.  It tries to hold the same compressed schedule to

---

[2] LifeNet's Complaint hedges by asserting that RTI infringes "at least" certain patent claims and providing "exemplary" claim charts.  (*See* Dkt. 1 at ¶¶ 104-05, 107-08, 110-11, and 113-14.)

trial as LifeNet's first alternate but does so by *compressing* the Patent Local Rules without any explanation as to why times should be shortened in a case involving five patents and seven products. Furthermore, the schedule inappropriately turns the Court's rules on their head by requiring RTI to elect whether it should waive the attorney-client privilege on any opinions of counsel *before* the Court has even construed the claims. This is unfair and unheard of. RTI should not be forced to make this potentially important decision before it knows how the patents will be construed. If the Court were to construe them such that RTI's products cannot be found to infringe then RTI would have been forced to potentially waive the attorney-client privilege for no reason. This is why the Patent Local Rules provide that the substance of any legal advice of counsel "*shall not be discoverable*" until the earlier of "five (5) days *after a ruling* on summary judgment indicating a triable issue of fact to which willfulness would be relevant; or . . . thirty (30) days prior to the close of fact discovery under the discovery track to which the case is assigned." (*See* LPR 5.2(a) (emphasis added).) The rules are designed so that fact discovery remains open during the claim construction process. But LifeNet's schedule fails to do this (closing fact discovery during claim construction). The rules also provide that if, at the time the Court issues its claim construction ruling, there are less than 30 days left of fact discovery, "the parties shall have an additional forty-five (45) days in which to take discovery. . . ." (*Id.* at LPR 6.7.)

26

This allows the parties to obtain discovery that depends on the Court's claim construction.  LifeNet's schedule fails to account for this as well.  These are but a few of the many problems with LifeNet's schedule "incorporating" the Patent Local Rules.

## V.     Trial Date and Length of Trial

The parties estimate that a jury trial on the five patents currently in the case will require 10 trial days.  As with the scheduling order, the parties are unable to agree on a proposed trial date.  The parties' respective positions are set out below.

### A.     Plaintiff's Trial Date Position

For the reasons set forth above, Section V.A, Plaintiff believes that this case can be ready for trial in July 2019, regardless of whether the PLR are incorporated into the schedule or not.  The additional five months to trial beyond the eight months suggested by the Court in its Initial Scheduling Order, Dkt. 17 at 2(a)(6)(iv), are included to allow the pleadings to stabilize, allow Defendants to answer, and provide Defendants additional time to prepare their document production and expert reports, which they have indicated will not be complete by the current Rebuttal Expert Report date of October 31, 2018.

### B.     Defendant's Trial Date Position

The July of 2020 trial date is consistent with the Patent Local Rules, prior patent case scheduling orders issued in this Court, and national averages, allows a reasonable period of time for RTI to petition for IPR and develop defenses and is

fair and reasonable in view of LifeNet's extraordinary and egregious delay in bringing this action.

## VI.   Discovery Plan

### A.   Subject of Discovery

The parties anticipate discovery on all subject matter related to the claims and defenses of both parties, the full extent of which will not be known until RTI files an answer to LifeNet's Complaint.   The parties intend to pursue requests for production of documents and things, interrogatories, requests for admissions, depositions, and other forms of discovery authorized by the Federal Rules of Civil Procedure.

### 1.   Defendant's Additional Statement Regarding Foreign Discovery

If the Court allows LifeNet's claims against Fortiva to go forward, RTI anticipates additional discovery issues because most of the documents and witnesses who have knowledge of that product specifically and Tutoplast generally are located in Germany.   Discovery of documents and witnesses located in the European Union may conflict with E.U. law, particularly the E.U. General Data Protection Regulation (GDPR), and German laws limiting U.S. style discovery of German corporate entities and citizens.

### B.  Discovery Phasing and Limits

The parties agree that the discovery limits in the applicable Federal Rules of Civil Procedure 26-45, and the Court's Initial Scheduling Order at Section (4), shall apply, except that the parties agree that instead of a limit on the number of depositions, the total number of hours of non-expert depositions, including depositions of third parties, per side, will be limited by hours of actual deposition testimony time.  The parties agree that depositions of experts under Fed. R. Civ. P. 26(b)(4) do not count against the hours limit, but are limited in length under Fed. R. Civ. P. 30(d)(1).  The parties also agree that depositions of an individual not testifying as a Rule 30(b)(6) designee are limited in length under Fed. R. Civ. P. 30(d)(1).The parties are unable to agree, however, on the limit on the number of hours and therefore present their respective position on the hours limits below.

### 1.  Plaintiff's Position on Deposition Limits

Plaintiff notes that RTI has not yet answered the Complaint.  Plaintiff therefore presents its position on the number of hours of non-expert depositions on the current state of the pleadings and expects that this number will need to be revisited if RTI files counterclaims against LifeNet.  LifeNet proposes a limit of 77 hours of actual deposition time.  The total hours taken under Fed. R. Civ. P. 30(b)(6) is limited to 28 hours for each side, and deposition time under Fed. R. Civ. P. 30(b)(6) is included in the 77 hour total.

### 2. Defendant's Position on Deposition Limits

RTI requests that the parties each be allowed 100 hours of actual deposition time.  RTI anticipates that it will have to depose three inventors on five patents on complicated subject matter spanning two decades.  From what RTI can discern five different law firms handled the prosecution of the patents-in-suit for LifeNet.  Third parties may also need to be deposed on prior art.

As for 30(b)(6) deposition testimony, 14 hours (double the presumptive limit) should be sufficient at this stage.  Absent good cause shown, the 28 hours of 30(b)(6) examination requested by LifeNet imposes a substantial burden in terms of the requirement that the party must prepare corporate witnesses for up to four days of examination.

Both parties agree that nothing in this Joint Report shall prevent either party from seeking additional discovery as allowed by the Federal Rules of Civil Procedure, the Local Rules of this Court, or any other applicable law.

### C. Dates for Commencing and Completing Discovery:

The parties have commenced discovery, as set out in the parties' Joint Discovery Report, Dkt. No. 40, filed on September 4, 2018.  The parties have included dates for completion of fact, claim construction, and/or expert discovery in their respective proposed schedules, set forth above, Section IV.

## VII.   Electronically Stored Information

Both parties have requested and will produce information from electronic or computer-based media.  Both parties have taken measures to preserve potentially discoverable data from alteration or destruction in the ordinary course of business.

The parties have been negotiating a Proposed ESI Order that complies with the Court's guidance set forth in the Initial Scheduling Order and believe that they will reach agreement on its terms.  The parties will submit it for the Court's approval when they reach agreement.

## VIII.  Early Settlement

Both parties agree that early mediation may be productive after some discovery has taken place.  The parties' agree that private mediation is the best alternative dispute resolution process for any early settlement discussions. The parties propose January 2019 for mediation, with a private mediator to be agreed on by the parties.

## IX.   Manual for Complex Litigation

The parties agree this case need not be made subject to the Manual for Complex Litigation.

Respectfully submitted,


DATED:  September 17, 2018          */s/ Michael H. Jacobs*
                                    Michael J. Songer
                                    (admitted *Pro Hac Vice*)

Michael H. Jacobs
(admitted *Pro Hac Vice*)
Vincent J. Galluzo
Florida Bar No. 86472
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC  20004-2595
(202) 624-2500
(202) 628-5116 - fax
msonger@crowell.com
mjacobs@crowell.com
vgalluzo@crowell.com

William Jackson Matney, Jr.
(admitted *Pro Hac Vice*)
RatnerPrestia
1090 Vermont Avenue, N.W.
Suite 1200
Washington, D.C. 20005
(202) 808-7372
wjmatney@ratnerprestia.com
(*Pro Hac Vice* pending)

Richard E. Ramsey
Florida Bar No. 715026
rramsey@wickersmith.com
WICKER, SMITH, O'HARA,
McCOY & FORD, P.A.
50 North Laura Street, Suite 2700
Jacksonville, Florida 32202
(904) 355-0225
(904) 355-0226 - fax

*Attorneys for Plaintiff*
*LifeNet Health*

September 17, 2018                    */s/ Gregory C. Schodde*
                                     _____

David D Headrick
Gregory C. Schodde

James P. Murphy
MCANDREWS HELD & MALLOY, LTD.
34th Floor
500 West Madison Street
Chicago, Illinois 60661
(312) 775-8000
(312) 775-8100 – fax
dheadrick@mcandrews-ip.com
gschodde@mcandrews-ip.com
jmurphy@mcandrews-ip.com

Maxwell Louis Minch
Robert Troy Smith
Stephanie M. Marchman
GRAYROBINSON PA
720 SW 2nd Avenue
Suite 106
Gainesville, Florida  32601
(352) 372-9269
(352) 376-6484 - fax
maxwell.minch@gray-robinson.com
troy.smith@gray-robinson.com
stephanie.marchman@gray-robinson.com

Robert Troy Smith
GRAYROBINSON PA
50 North Laura Street
Suite 1100
Jacksonville, Florida  32202
(904) 598-9929
(904) 598-9109 - fax
troy.smith@gray-robinson.com

*Attorneys for Defendant*
*RTI Surgical, Inc.*

DCACTIVE-46442220.11